IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID A. JACKSON-MACKAY, AUSTIN D. ANDERSON, and PRESTON WISENBAKER,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>VONNIE COTANT, Jail Administrator, Scotts Bluff County Detention Center; MICHAEL DEDINSKY, Deputy Jail Administrator, Scotts Bluff County Detention Center; JULIE WHITE, Administrative Sergeant, Scotts Bluff County Detention Center; VAL RIVAS, Mail Room Supervisor, Scotts Bluff County Detention Center; KARI WOLF, Mail Room Clerk, Scotts Bluff County Detention Center; COUNTY OF SCOTTS BLUFF, NEBRASKA, acting through the Scotts Bluff County Detention Center; SCOTTS BLUFF COUNTY COMMISSIONERS; SCOTTS BLUFF COUNTY SHERIFF'S DEPARTMENT; SCOTTS BLUFF COUNTY DETENTION CENTER; MARK OVERMAN, Sheriff, Scotts Bluff County Detention Center; and JEREMIAH BRETTHAUER, Inmate Services Liasion, Scotts Bluff County Detention Center,<br><br>　　　　　Defendants. | **8:22CV10**<br><br>**MEMORANDUM AND ORDER** |

## I. INTRODUCTION

This matter is before the court for an initial review of Plaintiffs' Amended Complaint (Filing 10). Plaintiffs allege that while they were pretrial detainees at the Scotts Bluff County Detention Center, their incoming legal mail was opened and photocopied by jail staff prior to delivery, and their requests for notarization and photocopying of documents for court filings were wrongly denied. They seek to recover compensatory and punitive damages for claimed constitutional violations.

This action was initiated on January 10, 2022, by Plaintiff David A. Jackson-Mackay ("Jackson-Mackay") against six named Defendants—Vonnie Cotant ("Cotant"), Jail Administrator; Michael Dedinsky ("Dedinsky"), Deputy Jail Administrator; Julie White ("White"), Administrative Sergeant; Val Rivas ("Rivas"), Mail Room Supervisor; Kari Wolf ("Wolf"), Mail Room Clerk; and Jeremiah Bretthauer ("Bretthauer"), Inmate Services Liasion [*sic*]—plus ten unknown defendants. The court conducted an initial review of Jackson-Mackay's Complaint (Filing 1) and determined that plausible claims for relief against certain Defendants in their individual capacities were sufficiently stated, but that no official-capacity claims could be maintained; the court then gave Jackson-Mackay 30 days to file an amended complaint if he wished to pursue official-capacity claims. See Memorandum and Order entered on February 23, 2022 (Filing 8).[1]

The Amended Complaint was timely filed on March 18, 2022. This pleading added two Plaintiffs—Austin D. Anderson ("Anderson") and Preston Wisenbaker ("Wisenbaker")—and five new Defendants—County of Scotts Bluff, Nebraska (the "County"), acting through the Scotts Bluff County Detention Center; Scotts Bluff County Commissioners (the "Commissioners"); Scotts Bluff County Sheriff's Department (the "Department"); Scotts Bluff County Detention Center ("SBCDC"); and Mark Overman ("Overman"), Sheriff, Scotts Bluff County Detention Center. All Defendants are sued in their individual and official capacities. Filing 10, ¶ 13.

Although Anderson and Wisenbaker both signed the Amended Complaint, they did not pay filing fees or request leave to proceed in forma pauperis ("IFP").

---

[1] In its memorandum opinion, the court inadvertently stated that Jackson-Mackay had been a pretrial detainee in Buffalo County.

The court therefore gave them the option to withdraw from the case, see Filing 11, but both men subsequently filed IFP applications, which were granted. Jackson-Mackay, however, filed an appeal from the court's order and the denial of his motion for reconsideration. His appeal was dismissed on September 6, 2022, and jurisdiction reverted to the district court with the issuance of the Court of Appeals' mandate on that same date. See Filings 62, 63.

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C.A. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d

912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

III. DISCUSSION

Liberally construing Plaintiffs' Amended Complaint, this is a civil rights action brought under 42 U.S.C. § 1983.[2] To state a claim under section 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

A. The Parties

Three of the named Defendants—the Commissioners, the Department, and SBCDC—are not "persons" who can be sued under section 1983. Whether a party, other than an individual or a corporation, has the capacity to be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b). Each county in Nebraska is "a body politic and corporate" which "may sue and be sued," Neb. Rev. Stat. Ann. § 23-101 (Westlaw 2022*)*, but the same is not true of county offices or departments. *See Buzek v. Pawnee Cnty.*, No. 4:05CV3214, 2006 WL 2270344, at *8 (D. Neb. Aug. 8, 2006) ("[T]he county board does not have a separate legal existence and is not capable itself of suing or being sued."); *LeFever v. Dawson Cnty. Sheriff's Dep't*, No. 4:20CV3066, 2020 WL 4436391, at *4 (D. Neb. Aug. 3, 2020) ("[S]heriff's departments are not suable entities."); *Robinson v. Nebraska*, No. 8:22CV151, 2022 WL 4096900, at *3 (D. Neb. Sept. 7, 2022) ("[A] correctional institution or its departments are not entities subject to suit under section 1983."). These three non-suable Defendants therefore will be dismissed from the action.

---

[2] The Amended Complaint also cites *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971), but a *Bivens* action is against a federal official, not a state actor. *See Duffy v. Wolle*, 123 F.3d 1026, 1037 (8th Cir. 1997) ("'[A]n action under *Bivens* is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials.'") (quoting *Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995)).

4

Because the County of Scotts Bluff has been named as a Defendant in the Amended Complaint, all official-capacity claims against other Defendants will be dismissed as duplicative of Plaintiffs' claims against the County. *See Villarreal v. Schmaderer*, No. 8:20CV403, 2021 WL 2444276, at *3 (D. Neb. June 15, 2021) (dismissing official-capacity claims against police officers where the municipality was also named as defendant); *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (proper to dismiss claims against city police officer sued in official capacity as redundant of claims against city); *Eagle v. Morgan*, 88 F.3d 620, 629 n.5 (8th Cir. 1996) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

### 1. Municipal Liability

"It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the [County] may be held liable under § 1983." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)). In other words, it is not enough to show that the officers were acting at the direction of someone who was higher in the chain of command. To prevail on a claim against the County, Plaintiffs must show that the alleged constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016).

"[M]unicipal liability under § 1983 attaches where ... a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Thus, a single decision by a municipal official can constitute official policy. *Id.* (citing *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016)). But "liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (quoting *Pembaur*, 475 U.S. at 481).

"Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a

continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.'" *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700).

A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018); *see also Brossart v. Janke*, 859 F.3d 616, 627-28 (8th Cir. 2017) ("A municipality may also be liable where its policies are lawful on their face but municipal action, such as failure to train or supervise, was taken with deliberate indifference as to its known or obvious consequences and led an employee to violate a plaintiff's rights.") (quotation marks and citations omitted).

2. Individual Liability

"To prevail on a § 1983 [individual-capacity] claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Torres v. City of St. Louis*, 39 F.4th 494, 504 (8th Cir. 2022) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)). "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." *Faulk v. City of St. Louis*, 30 F.4th 739, 744 (8th Cir. 2022) (quoting *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006)).

"Supervisors … cannot be held vicariously liable under § 1983 for the actions of a subordinate. To state a claim, the plaintiff must plead that the supervising official, through his own individual actions, has violated the Constitution." *L.L. Nelson Enterprises, Inc. v. Cnty. of St. Louis*, 673 F.3d 799, 810 (8th Cir. 2012) (citations omitted). "[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1031 (8th Cir. 2012) (quoting *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)).

B. The Claims

The Amended Complaint contains three Counts, which may be summarized as follows: (1) "Improper Handling of Special (Legal) Mail" by White, Rivas, and Wolf, pursuant to a policy which was created by Cotant and Dedinsky and approved by Overman and the County, and which Plaintiffs complained about to White, Rivas, and Bretthauer; (2) "Denial of Access to Notary Public Services and Photocopy Services" by Cotant, Dedinsky, White, and Bretthauer, whose "policy" in this regard was approved by Overman and the County; and (3) "Failure to Supervise, Train, and Oversee Operations" by Overman and the County.

1. Handling of Incoming Legal Mail

"Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997); *see Cody v. Weber,* 256 F.3d 764, 767-68 (8th Cir. 2001) (reiterating that "mail from an attorney to an inmate client cannot be opened for inspection outside the inmate's presence"); *Powells v. Minnehaha Cnty. Sheriff Dep't,* 198 F.3d 711, 712 (8th Cir. 1999) (reversing pre-service dismissal pursuant to 28 U.S.C. §§ 1915(e) and 1915A because inmate's claim that correctional officers "opened his 'legal mail' when he was not present" stated a sufficient constitutional claim); *see also Thongvanh v. Thalacker,* 17 F.3d 256, 258-59 (8th Cir. 1994) (prison officials' duty to maintain security within prison does not extend to reading inmates' legal mail).

Plaintiffs allege that on August 30, 2021, SBCDC's Jail Administrator (Cotant) and Deputy Jail Administrator (Dedinsky) "implemented a new jail policy that all incoming inmate mail, to include mail clearly and properly labeled 'legal mail' would be opened and photocopied, prior to it being given to the inmate to whom it was addressed," and that Sheriff Overman "authorized the mail policy to be implemented" while "acting pursuant to the authority granted to him by the County." (Filing 10, pp. 6-7, ¶¶ IV. 1-3; p. 9, ¶ V.A. 3) Administrative Sergeant White, Mail Room Supervisor Rivas, and Mail Room Clerk Wolf allegedly opened and photocopied all incoming inmate mail in accordance with the policy. (Filing 10, p. 7, ¶ IV. 3.) Jackson-Mackay allegedly complained to White on November 16, 2021, and to Wolf on November 24, 2021, after he received letters from his criminal

7

defense attorney that had already been opened. (Filing 10, p. 7, ¶¶ IV. 4, 5; pp. 10-11, ¶¶ V.A. 7-9.) It is also generally alleged that "[o]n several occasions between October 21, 2021 and February 28, 2022, the Plaintiffs received mailings from the Federal Public Defenders Officer, clearly labeled and marked 'legal mail,'" which Rivas and White processed and directed Wolf to "deliver, open, and photocopy." (Filing 10, p. 10, ¶ V.A. 6.) Plaintiffs allegedly complained to Inmate Services Liaison Bretthauer "multiple times" during this period of time regarding the opening and photocopying of legal mail. (Filing 10, p. 8, ¶ IV. 8.)

The Amended Complaint contains sufficient facts showing direct involvement by Defendants Cotant, Dedinsky, Overman, White, Rivas, and Wolfe in the alleged constitutional violation, for which they may be held personally liable under 42 U.S.C. § 1983. Defendant Bretthauer, however, is only alleged to have received complaints from Plaintiffs, and there are no facts showing that he had any authority as an "inmate services liaison" to put a stop to the opening and photocopying of legal mail. The claim against him therefore will be dismissed without prejudice.

In Nebraska, "[e]xcept in counties where a county board of corrections exists and has assumed responsibility over the jail pursuant to sections 23-2801 to 23-2806, the sheriff shall have charge and custody of the jail, and the prisoners of the same, …." Douglas County and Lancaster County, the State's two most populous counties, are required to have a county board of corrections, which "shall have charge of the county jail and correctional facilities and of all persons by law confined in such jail or correctional facilities," but in all other counties (with a population of less than one hundred fifty thousand) a county board of corrections is optional. Neb. Rev. Stat. Ann. § 23-2802 (Westlaw 2022). Plaintiffs sufficiently allege that the opening and photocopying of inmates' incoming legal mail at SBCDC was an official policy of the County because it was approved by Sheriff Overman, acting pursuant to either statutory or delegated authority.[3] Thus, a plausible § 1983 claim is stated against the County for mishandling Plaintiffs' incoming legal mail.

---

[3] "A subordinate official possesses delegated final policymaking authority when that official acts (1) free of review and (2) without any constraints imposed as a matter of policy by the original policymaker. *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017) (citing *City of St. Louis v. Praprotnik*, 485 U.S.

8

### 2. Interference with Access to Courts

It is also well established "that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To prevail on an access-to-courts claim, a prisoner must establish that he sustained "actual injury." *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001). To demonstrate "actual injury," the prisoner must show "that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* (quoting *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998)). "[A]n isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation." *Gardner*, 109 F.3d at 431 (internal quotation marks omitted).

It is alleged that "[o]n at least 10 occasions between October 21, 2021 through February 28, 2022, Plaintiffs submitted written requests to have legal documents notarized and photocopied," and those requests were denied by Defendants Cotant, Dedinsky, White, and Bretthauer with the explanation each time that "we are unable to verify your pro se status." (Filing 10, pp. 15-16, ¶¶ V.B. 3-5.) It is further alleged that "Defendant Overman approved and authorized the implementation of the policy related to notary and photocopy service" and that the individual Defendants "acted with the authority and consent of … the County." (Filing 10, p. 17, ¶¶ V.B. 14, 15.) Defendants' refusals allegedly caused Jackson-Mackay to miss an appeal deadline in a criminal case, and prevented all Plaintiffs from filing lawsuits challenging the conditions of their confinement. (Filing 10, pp. 16-17, ¶¶ V.B. 9, 10.)

Liberally construed, the Amended Complaint alleges plausible claims for relief against Defendants Cotant, Dedinsky, White, Bretthauer, and Overman in their individual capacities, and against the County, for interfering with Plaintiffs' right of access to the courts. But to the extent Count 2 of the Amended Complaint might also

---

112, 127 (1988)). "If the board retains the authority to review, even though it may not exercise such review or investigate the basis of the decision, delegation of final authority does not occur." *Id.* at 946-47 (quoting *Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist.*, 523 F.3d 1219, 1229 (10th Cir. 2008)). "Simply going along with discretionary decisions made by one's subordinates ... is not a delegation to them of the authority to make policy." *Praprotnik*, 485 U.S. at 130.

9

be construed to allege claims against Defendants Rivas and Wolf in their individual capacities (because of generic allegations against "Defendants"), such claims will be dismissed without prejudice.

### 3. Failure to Train or Supervise

To state a viable failure-to-train claim against Scotts Bluff County, Plaintiffs must "plead facts sufficient to show that (1) [the] County's officer-training practices were inadequate; (2) [the] County was deliberately indifferent to the rights of others in adopting these training practices, and [the] County's failure to train was a result of deliberate and conscious choices it made; and (3) [the] County's alleged training deficiencies caused [Plaintiffs'] constitutional deprivation." *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). "[A] claim for failure to supervise requires the same analysis as a claim for failure to train." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (quoting *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007)). Similarly, to state a viable failure-to-supervise claim against a supervisory Defendant in his or her individual capacity, Plaintiffs must plead sufficient facts to show that the supervisor (1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused injury to Plaintiffs. *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010).

Here, Plaintiffs allege in conclusory fashion that Sheriff Overman and the County "failed to supervise their staff, whereby allowing the unlawful policies to be created or enacted," and that "[t]he supervisory Defendants neglected or failed to perform their lawful duties, namely to supervise and train their staff." (Filing 10, pp. 19-20, ¶¶ V.C. 4, 6.) A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, Plaintiffs have alleged mere negligence or inadvertence, which "does not rise to the level of deliberate indifference." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Count 3 of the Amended Complaint (Filing 10, pp. 19-20, ¶¶ V.C. 1-7) therefore will be dismissed for failure to state a claim upon which relief may be granted against any Defendant.

## IV. CONCLUSION

For purposes of initial review, and subject to any defenses that may be raised by Defendants, the court finds that Plaintiffs' Amended Complaint states plausible claims for relief under 42 U.S.C. § 1983 against certain Defendants, but that certain other claims and Defendants should be dismissed from the action.

IT IS THEREFORE ORDERED:

1. All claims against Defendant Scotts Bluff County Commissioners are dismissed without prejudice, and said Defendant shall no longer be a party to this action.

2. All claims against Defendant Scotts Bluff County Sheriff's Department are dismissed without prejudice, and said Defendant shall no longer be a party to this action.

3. All claims against Defendant Scotts Bluff County Detention Center are dismissed without prejudice, and said Defendant shall no longer be a party to this action.

4. All official-capacity claims against Defendants Vonnie Cotant, Michael Dedinsky, Julie White, Val Rivas, Kari Wolf, Jeremiah Bretthauer, and Mark Overman are dismissed without prejudice, as being duplicative of Plaintiffs' claims against the County of Scotts Bluff.

5. Plaintiffs' claim against Defendant Jeremiah Bretthauer in his individual capacity regarding the opening and photocopying of Plaintiffs' legal mail (Count 1) is dismissed without prejudice.

6. Plaintiffs' claims against Defendants Val Rivas and Kari Wolf in their individual capacities regarding notary and photocopy services (Count 2) are dismissed without prejudice.

7. Count 3 of the Amended Complaint ("Failure to Supervise, Train and Oversee Operations") is dismissed without prejudice as against all Defendants.

8. This action may proceed to service of process on Count 1 of the Amended Complaint ("Improper Handling of Special (Legal) Mail") as against Defendants Cotant, Dedinsky, White, Rivas, Wolf, and Overman, in their individual capacities, and against the County.

9. This action may proceed to service of process on Count 2 of the Amended Complaint ("Denial of Access to Notary Public Services and Photocopy Services") as against Defendants Cotant, Dedinsky, White, Bretthauer, and Overman, in their individual capacities, and against the County.

10. The Clerk of the Court is directed to complete summons forms and USM-285 forms for Defendants Cotant, Dedinsky, White, Rivas, Wolf, Overman, and Bretthauer, in their individual capacities, using the following address:

    Scotts Bluff County Detention Center
    2522 7th Street
    Gering, NE  69341

11. The Clerk of the Court is directed to complete a summons form and a USM-285 form for service on Defendant County of Scotts Bluff, using the following address:

    County Clerk of Scotts Bluff County
    Administration Building, First Floor
    1825 10th Street
    Gering, NE  69341

12. The Clerk of the Court shall forward the completed forms to the Marshals Service, together with copies of Plaintiffs' Amended Complaint (Filing 10) and this Memorandum and Order, for service upon Defendants by certified mail or other authorized method. *See* Fed. R. Civ. P. 4(e); Neb. Rev. Stat. § 25-508.01(1) (service on individual); Neb. Rev. Stat. § 25-510.02(2) (service on county).[4]

---

[4] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782,

13. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiffs.

14. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiffs are granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

15. The Clerk of the Court is directed to set a pro se case management deadline in this case with the following text: "December 22, 2022: Check for completion of service of summons."

16. Plaintiffs shall keep the court informed of their current addresses at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 23rd day of September, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

---

783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an IFP case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory); Fed. R. Civ. P. 4(c)(3) (court must order that service be made by United States Marshal if plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915). *See, e.g., Beyer v. Pulaski County Jail*, 589 Fed. App'x 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).